2005 SD 21

**MHW LIMITED FAMILY PARTNERSHIP, Plaintiff and Appellee,**

v.

**Abdollah FARROKHI, Defendant and Appellant.**

**No. 23315.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 10, 2005.

Decided Feb. 9, 2005.

Gregory J. Bernard of Thomas, Nooney, Braun, Solay & Bernard, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Sara L. Larson, Michael M. Hickey of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for defendant and appellant.

MEIERHENRY, Justice.

[¶ 1.] This is an appeal from an action by MHW Limited Family Partnership (MHW) to recover unpaid rents from Abdollah Farrokhi. The lease agreement at

issue was entered into by Farrokhi and Mort Wilkins Real Estate Investments (MWREI), MHW's predecessor in interest to the leased property. MWREI subsequently transferred the property to MHW by quitclaim deed. The question of whether this conveyance by the lessor also conveyed the obligations of the lease is one of first impression in South Dakota. The trial court ruled in favor of MHW, finding that the obligations of the lease were conveyed. We affirm.

## FACTS

[¶ 2.] On August 13, 1996, MWREI agreed to lease the property located at 518 Mt. Rushmore Road to Farrokhi for a five year term commencing on September 1, 1996 and ending on August 31, 2001. MWREI was a business name for Mort Wilkins Sr., the only principal in the business. On November 21, 1996, Mr. Wilkins Sr. conveyed the property to MHW by quitclaim deed. MHW is a partnership in which Mr. Wilkins Sr. and his two sons were partners. Farrokhi continued to operate his business at the location under the terms of the lease and continued to write his rent checks to Morton Wilkins Sr. Ultimately his business was unsuccessful and beginning in January of 1999, Farrokhi quit paying rent on the premises. On June 3, 2002, MHW filed suit against Farrokhi to recover the unpaid rent for the remaining term of the lease. Farrokhi claimed that the lease was not enforceable. As a basis of his claim, Farrokhi asserted (1) that the conveyance of real property by quitclaim deed did not transfer interest in the existing lease because the lease is personal property, and (2) that there is no privity of contract between MHW and Farrokhi because the lease was not properly assigned to MHW. The trial court held that the quitclaim deed did transfer the interest in the lease to MHW. Judg-

ment was accordingly entered for MHW. Farrokhi appeals.

## ISSUE

**Whether the trial court erred by holding that MWREI effectively assigned its interest in a lease to MHW when it executed a quitclaim deed.**

## STANDARD OF REVIEW

[¶ 3.] This is a case of first impression in South Dakota and requires statutory interpretation. "We interpret 'statutes under a de novo standard of review without deference to the decision of the trial court.'" *Peterson v. Burns*, 2001 SD 126, ¶ 7, 635 N.W.2d 556, 561 (quoting *In re Estate of Karnen*, 2000 SD 32, ¶ 7, 607 N.W.2d 32, 35).

## DECISION

[¶ 4.] On appeal Farrokhi does not challenge the trial court's findings and conclusions regarding the validity of the lease, Farrokhi's breach of the lease, or the amount of the damages. Farrokhi's appeal is premised entirely on his claim that no privity of contract exists between MHW and Farrokhi resulting in MHW not being a real party in interest in this action.

[¶ 5.] The crux of Farrokhi's argument is that the interest conveyed in a lease is personal property and not real property. Pursuant to SDCL, 43-7-2, "estates for years are chattels real[.]" Farrokhi asserts that a "chattel real" is personal property. Further, he contends that because a lease agreement is personal property, it cannot be conveyed or assigned through a quitclaim deed because a quitclaim deed is a "deed that conveys a grantor's complete interest or claim in certain *real property* ...." BLACK'S LAW DICTIONARY 424 (7th ed. 1999) (emphasis added). Farrokhi reasons that since the lease agreement is personal property, it was not transferred by the

quitclaim deed to MHW; and consequently, MHW has no interest or privity in the contract allowing it to enforce the contract provisions.

[¶ 6.] Resolution of this case does not require us to rule on whether a lease is personal property because the South Dakota legislature has specifically addressed how rents are transferred. The pertinent statute provides:

A person to whom any real property is transferred or devised, upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease or for any waste or cause of forfeiture, as his grantor or devisor might have had.

SDCL 43–8–7.

[¶ 7.] It is undisputed that the real property was transferred to MHW by quitclaim deed. If the transfer in this case was a transfer of property "upon which rent has been reserved", MHW is entitled to the same remedies for recovery of rents that the grantor MWREI had. The question here is the meaning and application of the statutory language "upon which rent has been reserved." In other words, was the transfer of real property that was subject to a continuing lease a transfer of real property "upon which rent has been reserved"? If so, MHW has "the same remedies for recovery of rent, for nonperformance of any of the terms of the lease . . . as [MHREI] . . . might have had." *Id.*

[¶ 8.] When interpreting and applying the same legal principal expressed in our statutory language, other jurisdictions have found that unless there is evidence to the contrary, the transferee of real property is entitled to enforce the rental terms of a pre-existing lease. The North Carolina Supreme Court has held that "[a] conveyance of land, which is subject to a valid and continuing lease, passes to the purchaser the right to collect the rents thereafter accruing." *Pearce v. Gay,* 263 N.C. 449, 139 S.E.2d 567, 569 (N.C.1965). The North Carolina court went on to say:

If the grantor is to collect rents accruing subsequent to the effective date of the conveyance, he must, by reservation in his deed, provide that grantee shall not be entitled to possession prior to the expiration of the term fixed in the lease, or otherwise expressly reserve his right to collect subsequently accruing rents.

*Id.; See also* 49 AM.JUR.2D *Landlord and Tenant* § 1060 (2004). In an analogous situation the Supreme Court of Pennsylvania has stated: "When land is sold by the original lessor, the purchaser of the land steps into the shoes of the original lessor and can enforce such restrictions as against an assignee of the original lessee." *National Forge Co. v. Carlson,* 452 Pa. 516, 307 A.2d 902, 904 (1973). A California court has similarly addressed this issue stating:

Absent a contrary agreement of the parties, a sale by a landlord of real property during an unexpired term does not of itself abrogate the lease. Its effect is to grant all the rights of the original lessor to the grantee of the reversion. The grantee then becomes the landlord by operation of law and the tenant becomes a tenant of the grantee of the reversion. In determining whether a grantor retains its rights under a lease on transfer of the property, the crucial question is what the parties intended. The general rule that on sale the grantee becomes the landlord by operation of law does not apply, however, where the grantor expressly reserves its rights under the lease.

*Kirk Corp. v. First American Title Co.,* 220 Cal.App.3d 785, 809, 270 Cal.Rptr. 24, (1990) (internal citations and quotations

omitted); *See also* 49 Am.Jur.2d *Landlord and Tenant* § 1060 (2004).[1]

[¶ 9.] Other jurisdictions with statutory language either identical or nearly identical to SDCL 43–8–7 have found that a lease passes with a real property transfer. North Dakota's nearly identical statute is found at N.D. Cent. Code § 47–16–28 (2003).[2] An early North Dakota case discussed the common law basis of the statute as follows:

At early common law a lease was considered like any other. agreement or chose in action, and was not assignable so as to give the assignee an action against the tenant. Later the injustice which this rule caused was partially corrected by the enactment of 32 Hen. VIII. c. 34, § 1, declaring that the assignee of the reversion should become invested with the rents. It was thereafter held that the assignment of the reversion created a privity of estate between the assignee and the tenant[.]

*Northern Pac. R. Co. v. McClure*, 9 N.D. 73, 81 N.W. 52, 53 (N.D.1899). In a later case involving leased property that was transferred by the lessor, the North Dakota Supreme Court found that "[t]he right to this [rent] money was assigned to the defendant and passed to him by virtue of the deed." *Martin v. Royer*, 19 N.D. 504, 125 N.W. 1027, 1028 (N.D.1910). The Court went on to state:

Whatever Southerland was-that is, whether a tenant, cropper, or employee—in a strict technical sense, it seems clear that he was to do the plowing as compensation for the use of the plowed land, and it also seems clear that the right to it was assigned to the defendant by the deed to the same effect as though the technical relations of landlord and tenant had existed between the plaintiff and Southerland. This was rent, whether the technical relation of landlord and tenant existed under the contract by virtue of its other terms or not, and it passed to the defendant with the title to the land. In legal effect, this money was rent under the definition given. It belonged to the defendant and passed to him by virtue of the deed just as the crop did.

*Id.*

[¶ 10.] California has a statute identical to SDCL 43–8–7. *See* Cal. Civ. Code § 821 (West 2004). When interpreting its statute, the California Court of Appeals stated:

The general rule is that a sale by a lessor of real property during an unexpired term does not of itself abrogate the lease. Its effect is to grant all the rights of the original lessor to the grantee of the reversion. The grantee then becomes the landlord by operation of law and the tenant becomes a tenant of the grantee of the reversion. Civil Code section 821 says that a person to whom any real property is transferred, upon which rent has been reserved, is entitled to the same remedies for recovery of rent and for nonperformance of any of

---

1. Caselaw and common law consistently refer to the transfer of land which is subject to a lease as a transfer of the "reversion". Reversion is defined:

    A future interest in land arising by operation of law whenever an estate owner grants to another a particular estate, such as a life estate or term of years, but does not dispose of the entire interest.

    Black's Law Dictionary 1320 (7th ed. 1999).

2. N.D. Cent. Code § 47–16–28 states:

    A person to whom any real property is transferred or devised upon which rent has been reserved, or to whom any such rent is transferred, is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease or for any waste or cause of forfeiture as that person's grantor or devisor might have had.

the terms of the lease, as his grantor might have had. A lessee is under a duty to his lessor to perform the covenants of the lease....Pellin [the lessee by assignment] was bound to plaintiffs [grantees of the reversion] by the covenants of the lease[.]

*Rosenkranz v. Pellin,* 99 Cal.App.2d 650, 222 P.2d 249, 251 (1950) (internal citation omitted).

[¶ 11.] We find these other jurisdictions persuasive in the interpretation and application of our own statutes. *See also Cooper v. Ratley,* 916 S.W.2d 868, 870 (Mo. Ct.App.1996) ("an assignment of the reversion carries the right to the assignee to sue for rent") (citations and quotations omitted); *Blankenau v. Landess,* 261 Neb. 906, 626 N.W.2d 588, 593 (2001) ("Generally, the owner of leased property may sell the property, and such grant conveys the landlord's interest in the lease."); *Primock v. Jew,* 680 P.2d 1347, 1348 (Colo.Ct.App. 1984) ("A separate assignment of lessor's interest in the lease is not necessary."). Additionally, we consider the language of SDCL 43–25–28, which states:

Grants of rents, or of reversions, or of remainders, are good and effectual without attornments of the tenants, but no tenant, who before notice of the grant shall have paid rent to the grantor, must suffer any damage thereby.

This language further supports the conclusion that the grant of a reversion conveys to the transferee a right to recover the rent required by a preexisting lease.

[¶ 12.] In this case, there was no evidence by the wording of the deed or otherwise to indicate that MWREI reserved its rights to the lease. MWH acquired the real property subject to a preexisting and continuing lease agreement. MWH, therefore, "is entitled to the same remedies for recovery of rent, for nonperformance of any of the terms of the lease or for any waste or cause of forfeiture, as [MWREI] ... might have had." SDCL 43–8–7.

[¶ 13.] The trial court is affirmed.

[¶ 14.] GILBERTSON, Chief Justice, and SABERS and ZINTER, Justices, concur.

[¶ 15.] KONENKAMP, Justice, deeming himself disqualified, did not participate.